UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOCA RATON FIREFIGHTERS' AND POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:10-cv-07031 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| DEVRY INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF BOCA RATON FIREFIGHTERS' AND
POLICE PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON
COUNSEL

The Boca Raton Firefighters' and Police Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (2) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel and Wexler Wallace LLP ("Wexler Wallace") as liaison counsel for the class.

## I.     INTRODUCTION

Presently pending in this district is a securities class action lawsuit (the "Action") on behalf of all persons who purchased or otherwise acquired the common stock of DeVry Inc. ("DeVry" or the "Company") between October 25, 2007 and August 13, 2010, inclusive (the "Class Period"), against DeVry and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). Pursuant to the PSLRA, the Court is to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

The Pension Fund should be appointed as lead plaintiff because it: (1) timely filed this motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Fund's selection of Robbins Geller and Wexler Wallace as lead and liaison counsel, respectively, for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

DeVry is a global provider of educational services and the parent organization of Advanced Academics, Becker Professional Education, Carrington College and Carrington College California, Chamberlain College of Nursing, DeVry Brasil, DeVry University, and Ross University. Through

591494_1

these institutions, DeVry offers a wide array of programs in business, healthcare and technology, and provides services to students in middle school through postsecondary education, as well as accounting and financial professionals.

The complaint alleges that defendants issued materially false and misleading statements regarding DeVry's business and financial results during the Class Period.[1] Specifically, defendants failed to disclose that DeVry had been engaging in abusive and fraudulent recruiting and financial aid lending practices, thereby deceptively increasing DeVry's student enrollment and revenues with students incapable of repaying their student loans, who should have been denied admission and/or financial aid. As a result of defendants' false and misleading statements, DeVry's common stock traded at artificially inflated prices during the Class Period, reaching a high of $74.25 per share on April 22, 2010.

On August 13, 2010, after the market closed, the U.S. Department of Education released data on federal student-loan repayment rates at the nation's colleges and universities. The data showed that repayment rates were 54% at public colleges and 56% at private non-profit institutions, compared to just 38% at DeVry. On this news, the price of DeVry common stock dropped almost 9%, or $3.74 per share, on extremely heavy trading volume as the artificial student enrollment inflation propping up DeVry's stock price throughout the Class Period was removed.

The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

     (a)    the Company failed to disclose that it had engaged in improper and deceptive recruiting and financial aid lending practices and, due to the government's scrutiny

---

[1]    The defendants include DeVry, Daniel Hamburger (the Company's President and CEO), Richard M. Gunst (the Company's CFO and Treasurer), and David J. Pauldine (an Executive Vice President at the Company).

into the for-profit sector, the Company would be unable to continue these practices in the future;

(b)    the Company failed to maintain proper internal controls in regards to recruiting, enrollment, and financial aid practices;

(c)    many of the Company's programs were in jeopardy of losing their eligibility for federal financial aid; and

(d)    as a result of the foregoing, defendants' statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a reasonable basis when made.

As a result of defendants' materially false and misleading statements, DeVry's common stock traded at artificially inflated levels during the Class Period. After the above revelations leaked into the market, DeVry's stock price fell from its Class Period high, from $74.25 per share on April 22, 2010 to close at $38.97 per share on August 16, 2010. This drop removed the inflation from DeVry's stock price, causing real economic loss to investors who purchased the stock during the Class Period.

## III.   ARGUMENT

### A.   The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa)    has either filed the complaint or made a motion in response to a notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

591494_1

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil
Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  The Pension Fund meets each of these requirements and should

therefore be appointed as lead plaintiff.

### 1.    This Motion Is Timely

The notice that was widely published in business-oriented wire services in this action

informed class members that the deadline to move for appointment as lead plaintiff was 60 days

from November 1, 2010, or December 31, 2010.  *See* Motion, Ex. B; 15 U.S.C. §78u-4(a)(3)(A).

Because the 60-day deadline fell on a court holiday, pursuant to Fed. R. Civ. P. 6(a)(1)(C), January

3, 2011 is the next day that is not a "Saturday, Sunday or legal holiday" and this Motion is therefore

timely filed.  In addition, the Pension Fund has submitted a sworn certification confirming its

willingness and ability to serve as lead plaintiff.  *See* Motion, Ex. C.  Thus, the Pension Fund has

complied with the PSLRA's first requirement and is entitled to be considered for appointment as

lead plaintiff.

### 2.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund lost approximately $114,000 due to defendants'

misconduct.  *See* Motion, Exs. C, D.  To the best of its counsel's knowledge, there are no other

applicants who have sought appointment as lead plaintiff who have a larger financial interest.

Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial

interest.

### 3.    The Pension Fund Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise

satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-

4(a)(3)(B)(iii)(I)(cc). Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "In selecting the lead plaintiff under the PSLRA," "typicality and adequacy of representation are the only relevant considerations." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at \*10 (N.D. Ill. 2003) (Pallmeyer, J.) (explaining that a "wide-ranging analysis of the Rule 23 factors should be left for consideration of a motion for class certification").

Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Under Rule 23(a), claims are typical if they "'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *Motorola*, 2003 U.S. Dist. LEXIS 12651, at \*11.

Here, the Pension Fund satisfies the typicality requirement for purposes of selecting lead plaintiff because, like other class members, it: (1) purchased DeVry common stock during the Class Period; (2) paid allegedly inflated prices because of claimed false and misleading statements by defendants; and (3) thereby suffered damages. Thus, the Pension Fund's claims are typical of those

- 5 -

of other class members since its claims and the claims of other class members arise out of the same course of events.

The Pension Fund is based in Boca Raton, Florida. The Fund is overseen by an eight-member Board of Trustees and various other professionals and currently manage hundreds of millions of dollars of assets for the benefit of hundreds of beneficiaries and participants. In addition, the Pension Fund has successfully served as lead plaintiff in other PSLRA class action litigation. *See* Motion, Ex. C. Further, there is no evidence of antagonism or conflict between the Pension Fund and the class. The Pension Fund's significant loss demonstrates that it has a sufficient interest in the outcome of the case to ensure zealous advocacy on behalf of the class. *See* Motion, Exs. C-D. Additionally, as explained below, the Pension Fund's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.

Thus, the Pension Fund satisfies the requirements of Fed. R. Civ. P. 23 for the purposes of this Motion.

**B.     The Court Should Approve the Pension Fund's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Pension Fund has selected Robbins Geller and Wexler Wallace to serve as lead and liaison counsel, respectively.[2]

---

[2]     In accord with this Court's prior decisions in *Sutton v. Bernard*, 446 F. Supp. 2d 823 (N.D. Ill. 2006) and *In re Bally Total Fitness Sec. Litig.*, No. 04-cv-3530, Order, ¶2 (N.D. Ill. May 23, 2005), the Pension Fund has negotiated a fee agreement with counsel. The Pension Fund's counsel has also reviewed Grady, *Reasonable Fees: A Suggested Value-Based Analysis for Judges*, 184 F.R.D. 131 (1999) and *Williams v. State Bd. of Elections*, 696 F. Supp. 1561 (N.D. Ill. 1988). The Pension Fund has directed counsel to submit its fee agreement to the Court for its *in camera* review upon request.

- 6 -

Robbins Geller, a 180-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Motion, Ex. F. Robbins Geller's reputation for excellence has been repeatedly noted by district courts throughout the country and has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.[3] In addition, Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever, as well as the largest securities class action recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.[4]

*Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Guzman, J.), in particular, is but one example of how effectively the lawyers from Robbins Geller have successfully worked to benefit a class of injured investors. Following Robbins Geller's appointment as lead counsel, the firm defeated defendants' motions to dismiss and obtained certification of the class. For more than six years, Robbins Geller methodically prepared the *Household* case for trial, including taking more than sixty depositions and reviewing countless millions of pages of documentary evidence. In May

---

[3]     Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008). Similarly, Judge Algenon Marbley, in approving the $600 million recovery by Robbins Geller attorneys in *Cardinal Health*, noted that the "quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Lawyers with Robbins Geller are "nationally recognized leaders in complex securities class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

[4]     *See In re Enron Corp. Sec.*, Case No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion recovery for the class is largest in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (S.D. Ohio) (Marbley, J.) ($600 million recovery for the class was, at the time, the 10th largest in U.S. history and is still the largest recovery ever in the Sixth Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, Case No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J.) ($925 million recovery for the class represents the largest recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, Case No. 01-cv-1451 (D. Colo.) ($445 million recovery for the class is the largest recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala.) ($671 million recovery for the class is the largest securities class action recovery settlement in the Eleventh Circuit).

2009, the six-week trial yielded a plaintiffs' verdict. The *Household* trial and favorable verdict

demonstrates Robbins Geller's willingness to commit the necessary resources to protect the interests

of the class.

Wexler Wallace, based in Chicago, is nationally recognized as a leading firm in complex

class action and multidistrict litigation. *See* Motion, Ex. E. The firm has maintained, and continues

to maintain, lead involvement in numerous high-stakes, complex class action litigation throughout

the country, having been found by many courts to satisfy Fed. R. Civ. P. Rule 23(g). The following

describes only a few of Wexler Wallace's recent representative actions:

- *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass). Wexler Wallace was appointed co-lead counsel after the consolidation of a number of nationwide class actions against pharmaceutical manufacturers. Defendant drug companies allegedly published fictional prices, called Average Wholesale Prices ("AWPs"), that resulted in overpayment by consumers and third-party payers ("TPPs"). Wexler Wallace was a critical part of the trial team obtaining a verdict against two of the largest defendants in the litigation. Wexler Wallace and their co-counsel also successfully moved for certification of two nationwide classes under the unfair and deceptive trade practice laws of more than 30 states. Cases with various defendants have settled for more than $200 million. Giving final approval to one of the settlements, Judge Patti B. Saris of the District of Massachusetts praised Wexler Wallace and its co-counsel, saying that she wanted "to express appreciation again to class counsel for taking this case."

- *New England Carpenters Health Benefits Fund v. First DataBank*, No. 1:05-cv-11148 (D. Mass.) Wexler Wallace served as co-lead counsel in a class action against pharmaceutical wholesaling giant McKesson Corporation and pharmaceutical pricing publisher First DataBank, Inc. The litigation concerned an unlawful increase in published AWPs, causing consumers and TPPs to overpay for pharmaceuticals. Plaintiffs achieved a settlement with McKesson in the amount of $350,000,000, *__believed to be one of the largest RICO settlements in history__*.

In sum, the experience and resources which Robbins Geller and Wexler Wallace will bring to

this action if appointed as lead and liaison counsel on behalf of the class will ensure the class's

interests are responsibly and vigorously advanced. Thus, the Court may be assured that in the event

this Motion is granted, the members of the class will receive the highest caliber of legal

representation available from Robbins Geller and Wexler Wallace. *See* Motion, Exs. E & F. Accordingly, the Pension Fund's selection of counsel should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Pension Fund respectfully requests that the Court appoint the Pension Fund as Lead Plaintiff and approve its selection of Robbins Geller to serve as Lead Counsel and Wexler Wallace as Liaison Counsel for the class.

DATED:  January 3, 2011                    Respectfully submitted,

                                           WEXLER WALLACE LLP


                                                 s/ KENNETH A. WEXLER
                                                 KENNETH A. WEXLER

                                           Kenneth A. Wexler
                                           Edward A. Wallace
                                           Kara A. Elgersma
                                           55 W. Monroe Street, Suite 3300
                                           Chicago, IL  60603
                                           Telephone 312/346-2222
                                           312/346-0022 (fax)
                                           kaw@wexlerwallace.com
                                           eaw@wexlerwallace.com
                                           kae@wexlerwallace.com

                                           [Proposed Liaison Counsel]

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           David J. George
                                           Robert J. Robbins
                                           120 E. Palmetto Park Road, Suite 500
                                           Boca Raton, FL  33432
                                           Telephone:  561/750-3000
                                           561/750-3364 (fax)
                                           dgeorge@rgrdlaw.com
                                           pgeller@rgrdlaw.com
                                           rrobbins@rgrdlaw.com

                                           [Proposed] Lead Counsel for Plaintiff

591494_1

SUGARMAN & SUSSKIND
Robert A. Sugarman
Pedro A. Herrera
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: 305/529-2801
305/447-8115 (fax)
PHerrera@sugarmansusskind.com
Sugarman@sugarmansusskind.com

Additional Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 3, 2011.

s/ KENNETH A. WEXLER
KENNETH A. WEXLER

WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone 312/346-2222
312/346-0022 (fax)

E-mail: kaw@wexlerwallace.com

591494_1